ORDERED in the Southern District of Florida on SEP 18 2006.



Paul G. Hyman, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:

Joseph Thomas Vilsack, and
Deborah Lynn Loving,
    Debtors.
_____/

Case No.: 05-31792-BKC-PGH
Chapter 7

Michael R. Bakst, Trustee,
    Plaintiff,

v.

O'Connor & Taylor Development
Corp., & TBM Associates, Inc.,
    Defendants.
_____/

ADV. NO.: 05-6014-BKC-PGH-A

<u>MEMORANDUM ORDER DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
(C.P.#75) AND GRANTING IN PART O'CONNOR & TAYLOR DEVELOPMENT
CORP.'S MOTION FOR SUMMARY JUDGMENT (C.P.#78)</u>

**THIS MATTER** came before the Court on May 15, 2006 upon Plaintiff Michael R. Bakst's, Trustee, ("Trustee") *Motion for Summary Judgment Against Defendant O'Connor & Taylor Development*

Corp., a Florida Corporation ("Motion")[C.P. #75], and on May 19, 2006 upon Defendant O'Connor & Taylor Development Corp.'s ("OTDC") *Motion for Summary Judgment* ("Cross-Motion")[C.P.#78]. Pursuant to the Court's briefing orders, on June 6, 2006 OTDC filed its *Reply to Plaintiff's Motion for Summary Judgment Against Defendant O'Connor & Taylor Development Corp.* ("Response to Motion")[C.P.#87] and on June 19, 2006 Trustee filed a *Reply to Response of Defendant O'Connor & Taylor Development Corp., to Plaintiff's Motion for Summary Judgment* ("Reply to Motion")[C.P. #94]. Also pursuant to the Court's briefing orders, on June 12, 2006 Trustee filed a *Response to Defendant O'Connor & Taylor Development Corp.'s Motion for Summary Judgment* ("Response to Cross-Motion") [C.P. #92], and on June 22, 2006 OTDC filed its *Reply to Plaintiff's Response to Defendant O'Connor & Taylor Development Corp.'s Motion for Summary Judgment* ("Reply to Cross-Motion")[C.P.#106]. The parties filed a *Joint Stipulation of Facts for Hearing on Trustee's Motion for Summary Judgment and On Defendant O'Connor & Taylor Development Corp.'s Motion for Summary Judgment* ("Joint Stipulation") [C.P.## 96 & 104].

## BACKGROUND

On April 18, 2005, Joseph Thomas Vilsack ("Debtor" or "Vilsack") filed a joint petition for relief under Chapter 7 of the Bankruptcy Code with his wife, Deborah Lynn Loving. Vilsack is a licensed real estate sales associate within the State of Florida.

On September 14, 2001, Vilsack signed an Independent Contractor Agreement with defendant TBM Associates, Inc. ("TBM"), pursuant to which Vilsack agreed to provide services as a real estate sales associate for licensed real estate broker TBM. The Independent Contractor Agreement provided that TBM would pay Vilsack 95% of commission fees collected by TBM for brokerage services performed by Vilsack. Vilsack remained a sales associate with TBM as his licensed broker until March 31, 2004.

On February 13, 2004 an agreement was entered into ("BAP Contract") for the sale of approximately 6.64 acres of land located on the Intracoastal Waterway in Jupiter Florida ("Jupiter Property"). The closing date for the sale of the Jupiter Property was November 3, 2005. Pursuant to the BAP Contract, TBM received commissions in the amount of $112,500.00. Vilsack was the sales associate for this transaction.

On December 11, 2003, prior to February 13, 2004 execution of the BAP contract, Vilsack signed a letter agreement ("Letter Agreement") with OTDC. The Letter Agreement memorialized the agreement between Frank O'Connor, Joseph Taylor, and Vilsack to create "a formal business/real estate development relationship." Among other things the Letter Agreement provided for Vilsack to contribute to OTDC all of his earned fees including real estate and leasing commissions. OTDC however has never been registered with the Florida Real Estate Commission as a licensed real estate broker

3

or real estate sales associate. Joseph Taylor, an officer and director of OTDC, is a licensed real estate broker, but he was registered as a sole proprietor at the time of the Letter Agreement. On March 31, 2004, Vilsack became licensed as a real estate sales associate with Joseph Taylor as his licensed broker.

On October 31, 2005, the Trustee filed a *Verified Complaint for Declaratory Relief, for Injunctive Relief; and for Turnover, Pursuant to Federal Rule of Bankruptcy Procedure 7001(1), (7) and (9)* against defendants OTDC and TBM seeking turnover of the commission due to Vilsack for the sale of the Jupiter Property.

On December 7, 2005, TBM and the Trustee entered into a Stipulation to Compromise Controversy ("Stipulation") [C.P.#3]. The Stipulation provided for the Trustee to receive $79,375.00 from the commission for the sale of the Jupiter Property, while TBM retained $5,625.00 as its share of the commission and $27,500.00 as a set off. Although the Stipulation was noticed to OTDC, OTDC did not file an objection to the Stipulation. On January 13, 2006, the Court entered an *Order Approving Stipulation to Compromise Controversy and Dismissing Adversary Proceeding as to TBM Associates, Inc.* [C.P.#39].

On February 13, 2006, the Trustee filed an *Amended Verified Complaint for Declaratory Relief, for Injunctive Relief; and for Turnover, Pursuant to Federal Rule of Bankruptcy Procedure 7001(1), (7) and (9); or in the Alternative to Avoid and Recover Fraudulent*

4

*Transfers Pursuant to §726, Florida Statutes*. As a result of the sale of the Jupiter Property and the Stipulation with TBM, the Trustee is currently holding $79,375.00 which represents the commission that would have been due to the Debtor for the sale of the Jupiter Property. Both the Trustee and OTDC claim to be entitled to this money. OTDC's clam of entitlement stems from the Letter Agreement. The Trustee alleges that the Letter Agreement is unenforceable under Florida law because it purports to pay real estate commissions to OTDC who is not licensed as a broker or sales associate. Alternatively, the Trustee argues that the transfer to OTDC of the right to receive commissions earned by the Debtor is avoidable as a fraudulent transfer for less than reasonably equivalent value.

## **CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A),(E) and (O).

### I. *Summary Judgment*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

5

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. See *United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (citing *Anderson*, 477 U.S. at 248). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed R. Civ. P. 1). "Summary judgment is appropriate when, after drawing

all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir. 1988).

The Court finds that disputed issues of material fact exist with respect to the transfer in this matter. Therefore, entitlement to the commission funds cannot be determined on motions for summary judgment.

### II. *The Letter Agreement Does Not Violate Fla. Stat. §475 et. seq.*

Trustee's Motion argues that the Letter Agreement is unenforceable as a matter of Florida law because it purports to transfer real estate commissions earned by the Debtor to OTDC who is neither a licensed real estate broker nor a licensed real estate sales associate. Defendant OTDC's Cross-Motion argues that the Letter Agreement is a valid assignment of Vilsack's interest in proceeds from real estate commissions, not a contract for real estate commissions in exchange for brokerage services, and as such it does not violate Florida law.

The Letter Agreement provides in part:

> Based on our recent discussions regarding the creation of a formal business/real estate development relationship, the following is my understanding of the essential points of our agreement.
>
> That Joe Vilsack, Frank O'Connor, and Joe Taylor desire to enter into a long-term business relationship that begins with Joe Vilsack as an outside contractor to [OTDC] and a partner in future business ventures where Joe Vilsack makes a material contribution. The various parties will individually negotiate

7

each future business deal based on their contribution to the venture.

The Letter Agreement further provides for Vilsack to be compensated $4,000.00 per month as a consultant fee in exchange for development services, and to be provided a lease vehicle, reasonable office space and reasonable office support, for the initial (4) four month term of the agreement or the end of April, 2004. At the end of the initial four month term of the Letter Agreement, the parties were to re-evaluate the potential of the relationship and determine whether to proceed, alter or terminate the agreement.

The Letter Agreement also provides:

> It is agreed, from the date of this agreement, that Joe Vilsack will contribute all earned fees to OTDC including; real estate and leasing commissions, consulting fees, fees for due diligence efforts, fees for feasibility studies, finder fees and commissions for the sourcing of funds to finance projects and other business income generated during the term of this Agreement.

It is Trustee's position that this provision violates Florida Statutes § 475 et. seq., thereby rendering the Letter Agreement unenforceable as a matter of law.

Fla. Stat. § 475.41 entitled, Contracts of unlicensed person for commissions invalid, states:

> No contract for a commission or compensation for any act or service enumerated in § 475.01(3) is valid unless the broker or sales associate has complied with this chapter in regard to issuance and renewal of the license at the time the act or service was performed.

The Trustee argues that a plain reading of the statute determines that the Letter Agreement is invalid as a matter or law

8

because OTDC is not, and has never been, a licensed broker or sales associate. OTDC relies upon *Newcomer v. Rizzo*, 163 So. 2d 312 (3d DCA 1964) to argue that the Letter Agreement is a valid assignment of Vilsack's interest in proceeds from a real estate commission earned by Vilsack and as such it does not violate Fla. Stat. §475.41. For purposes of this matter, the Court must determine only whether the Letter Agreement violates Fla. Stat. § 475.41. The Court does not reach the issue of whether the Letter Agreement provides for a "valid" assignment of Vilsack's interest in a real estate commission because it is irrelevant to the issue of whether the Letter Agreement violates Fla. Stat.§ 475.41. In addition, the Court declines to comment on the "validity" of the assignment because that question impinges on the issue of whether the transfer was constructively fraudulent for less than reasonably equivalent value. For the reasons stated below, the Court finds that the Letter Agreement does not violate Fla. Stat. § 475.41.[1]

---

[1] Florida Statutes § 475.41 references § 475.01(3) which in turn references the definition of "broker" found in § 475.01(1)(a).

Fla. Stat. 475.01(3) states:
  Wherever the word "operate" or "operating" as a broker, broker associate, or sales associate appears in this chapter; in any order, rule, or regulation of the commission; in any pleading, indictment, or information under this chapter; in any court action or proceeding; or in any order or judgment of a court, it shall be deemed to mean the commission of one or more acts described in this chapter as constituting or defining a broker, broker associate, or sales associate, not including, however, any of the exceptions stated therein. A single such act is sufficient to bring a person within the meaning of this chapter, and each act, if prohibited herein, constitutes a separate offense.
  Fla. Stat.475.01(1)(a) provides the definition of "broker":
"Broker" means a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable

The BAP Contract for the sale of the Jupiter Property provided for payment of real estate commissions to TBM, a licensed broker. The Independent Contractor Agreement between Vilsack as a sales associate and TBM as his broker, provided for Vilsack to receive 95% of any fees as a commission for the performance by Vilsack of brokerage services for TBM. Since TBM and Vilsack were licensed in accordance with Florida law, the payment of a real estate commission pursuant to the BAP Contract and the Independent Contractor Agreement does not violate Fla. Stat. § 475.41.

Unlike the BAP Contract and the Independent Contractor Agreement, the Letter Agreement is not a contract for payment of

---

consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities or any real property or any interest in or concerning the same, including mineral rights or leases, or who advertises or holds out to the public by any oral or printed solicitation or representation that she or he is engaged in the business of appraising, auctioning, buying, selling, exchanging, leasing, or renting business enterprises or business opportunities or real property of others or interests therein, including mineral rights, or who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, or leases, or interest therein, including mineral rights, or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor; and all persons who advertise rental property information or lists. A broker renders a professional service and is a professional within the meaning of s. 95.11(4)(a). Where the term "appraise" or "appraising" appears in the definition of the term "broker," it specifically excludes those appraisal services which must be performed only by a state-licensed or state-certified appraiser, and those appraisal services which may be performed by a registered trainee appraiser as defined in part II. The term "broker" also includes any person who is a general partner, officer, or director of a partnership or corporation which acts as a broker. The term "broker" also includes any person or entity who undertakes to list or sell one or more timeshare periods per year in one or more timeshare plans on behalf of any number of persons, except as provided in ss. 475.011 and 721.20.

10

real estate commissions for services or acts enumerated in Fla. Stat. 475.01(3). The Letter Agreement purports to create a long term formal business/real estate development relationship. The Letter Agreement requires Vilsack to contribute real estate and leasing commissions as well as other types of business income, but it does not require OTDC to perform any of the services enumerated in section 475.01(3) in return for the contribution of Vilsack's commission and other income. It is therefore immaterial that OTDC is unlicensed because the Letter Agreement is not a contract of the kind prohibited by Fla. Stat.§ 475.41.

Since the Letter Agreement does not call for the performance of brokerage type services by OTDC, the case law relied upon by the Trustee is readily distinguished from the facts of this matter. In almost every case cited by the Trustee, the disputed contract was unenforceable because the unlicensed person sought to collect commissions for performance of the type of services enumerated in Fla. Stat. §475.01 (3). *See Global Resorts, Inc., v. Famille, Inc.*, 478 So. 2d 1179 (2d DCA 1985)(affirming lower court's ruling that alleged oral contract for payment to unlicensed plaintiff for soliciting prospective buyers of time share units was unenforceable pursuant to Fla. Stat. § 475.41); *Hanks v. Hamilton*, 339 So. 2d 1122 (4th DCA 1976)(affirming lower court ruling that written contract providing for payment, to an unlicensed person for services rendered, of a portion of commissions received by a broker

11

in connection with the purchase and sale of real property violated Fla. Stat. § 475.41); *Bradley v. Banks*, 260 So. 2d 256 (3d DCA 1972)(affirming lower court ruling that contract to pay a portion of commission to unlicensed person who secured property listing was void); *Tobin v. Courshon*, 155 So. 2d 785 (Fla. 1963)(determining that attorneys who were not licensed brokers could not share in brokerage commission paid to registered broker as compensation for cooperating with him in having effected the sale or real property); *Meadows of Beautiful Bronson, Inc., v. E.G.L. Investment Corp.*, 353 So. 2d 199, 200 (3d DCA 1978)("Thus, the agreement required by its terms, the rendition of real estate brokerage services in Florida by appellees with others who were neither licensed nor registered real estate brokers or salesmen in Florida. Such a contract is, as a matter of public policy, void and unenforceable."); *In re Captran Creditors Trust*, 94 B.R. 769 (Bankr. M.D. Fla.1988)(disallowing creditor's claim for commissions for selling time-share units where creditor was never licensed as a real estate broker); *First Equity Corp. of Fla., v. Riverside Real Estate Investment Trust*, 307 So. 2d 866 (3d DCA 1975)(affirming lower court ruling denying compensation to unlicensed broker corporation for performance of services in procuring lessee of real property).

The Trustee also cites *Campbell v. Romfh Bros. Inc.*, 132 So. 2d 466 (2d DCA 1961) in support of his position that an assignment of the right to receive commissions violates Florida law. The

Campbell court determined that the attempted collection of a note made payable to both a licensed broker and a licensed salesman as co-payees for commissions for services rendered in connection with the sale of real property violated Fla. Stat. §475.42(1)(d). Section 475.42(1)(d) prohibits an action to enforce a contract between a salesman and a client because only a broker can sue a client. The Campbell court determined that the subsequent assignment of the note by the salesman to his broker, without consideration, did not cure the initial illegality of the note. Unlike the note in Campbell, the BAP contract in this case does not violate Fla. Stat. §§ 475.42(1)(d) because the real estate commission at issue was paid to TBM who was a licensed broker under the BAP Contract. Furthermore unlike Campbell or the BAP Contract and the Independent Contractor Agreement in this case, the Letter Agreement is not a contract for payment of real estate commissions to OTDC, an unlicensed person, for services enumerated in § 475.01(3). Therefore the Court concludes that the Letter Agreement does not violate Fla. Stat. §475.41.

### III. *Disputed Issues of Material Fact Exist Regarding the Alleged Fraudulent Transfer*

Trustee alternatively argues that if the Court determines that the Letter Agreement is enforceable, the transfer of the right to receive the commission from the sale of the Jupiter Property is fraudulent and should be avoided pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.105 (1)(b) and 726.106(1).

"Under [11 U.S.C.] § 544, the Trustee may bring an action to avoid any transfer of an interest of the debtor in property which is 'voidable by any actual unsecured creditor under state law.'" *In re Seaway Int'l Transport, Inc.* 341 B.R. 333, 334 (Bankr. S.D. Fla. 2006)(citations omitted). "Consequently, the Trustee may utilize the state fraudulent conveyance statutes, which have a four-year statute of limitations." *Id.* In this matter, the Trustee seeks to avoid the transfer under Florida's constructive fraud statutes, sections 726.105 (1)(b) and 726.106(1)

Fla Stat. § 726.105(1)(b) titled "Transfers fraudulent as to present and future creditors" states in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> \* \* \*
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla Stat. § 726.106(1) titled "Transfers fraudulent as to present creditors" states in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the

14

> debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

"These sections provide that a transfer may be fraudulent if the debtor made the transfer '[w]ithout receiving a reasonably equivalent value in exchange for the transfer.'" *Profilet v. Cambridge Financial Corp.*, 231 B.R. 373, 382 (S.D. Fla. 1999). However the statutes do not define "reasonably equivalent value." In determining whether reasonably equivalent value was received in exchange for a transfer of property, courts consider many factors including the "good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length." *Kapila v. WLN Family Ltd. Partnership (In re Leneve)*, 341 B.R. 53, 57 (citations omitted). "[I]n determining whether the debtor received reasonably equivalent value, the essential examination is a comparison of 'what went out' with 'what was received'". *Id.*

In this matter, the Trustee maintains that the Letter Agreement was in the nature of an employment agreement in which the Debtor was compensated $4,000 per month and provided with a leased vehicle, office space and office support in exchange for Debtor providing "development services." It is the Trustee's position that the transfer to OTDC of the right to receive real estate commissions earned by the Debtor was made without the Debtor

receiving reasonably equivalent value in exchange for the transfer. OTDC argues that the Debtor did indeed receive reasonably equivalent value given that the Letter Agreement was executed before there was a sales contract for the Jupiter Property and twenty-three months before that transaction closed. OTDC maintains that at the time the Letter Agreement was signed, the value of the Debtor's interest in future real estate commissions was speculative at best. OTDC argues further that the transfer was intended to be, and was, a contemporaneous exchange for present value pursuant to Fla. Stat. § 726.104(3).

While the Court finds that the Letter Agreement does not violate Fla. Stat. § 475.41, the presence of disputed issues of material fact prevent the Court from determining in the context of summary judgment motions, whether the transfer of the right to receive real estate commissions by virtue of the Letter Agreement is a fraudulent transfer for less the reasonably equivalent value. A trial is therefore required for resolution of the disputed factual issues.

## CONCLUSION

The Court finds that the Letter Agreement is not a contract for the payment of commissions to an unlicensed person for services of the type enumerated in Fla. Stat. § 475.01(3). Therefore the Letter Agreement is not invalid pursuant to Fla. Stat. §475.41. The

16

existence of disputed issues of material fact preclude entry of summary judgment for either side on the issue of whether the Trustee may avoid the allegedly fraudulent transfer of the right to receive commissions.

### ORDER

The Court, having reviewed the submissions of the parties, the applicable law and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1. The Letter Agreement does not violate Florida Statutes § 475.41.

2. Trustee's Motion for Summary Judgment is **DENIED**.

3. OTDC'S Cross-Motion for Summary Judgment is **GRANTED IN PART** insofar as the Court finds that the Letter Agreement does not violate Florida Statutes § 475.41, all other relief requested in OTDC's Cross-Motion is **DENIED**.

###

Copies Furnished to:

Richard L. Massey, Esq.

Michael A Weeks, Esq.

Plaintiff's Counsel is directed to serve a copy of this Order on any interested party not listed above.